LAW OFFICE OF CYNTHIA V. ECUBE, ESQ.
*A Professional Corporation*
207 Martyr Street, Suite 3
Hagåtña, Guam 96910
Telephone: (671) 472-8889/922-8889
Telecopier: (671) 472-8890
Email Address: ecubelaw@netpci.com

*Attorney for Defendant*
**BENJAMIN U. CHARFAUROS**

FILED
DISTRICT COURT OF GUAM
JUN 2 0 2007
MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BENJAMIN U. CHARFAUROS, ) <br> ) <br> Defendant. ) <br> _____ ) | CRIMINAL CASE NO. 06-00041 <br><br> DEFENDANT CHARFAUROS <br> STATEMENT OF OBJECTIONS <br> REGARDING THE DRAFT <br> FINDINGS OF THE PSI REPORT |

### I. INTRODUCTION

**COMES NOW**, Defendant, **BENJAMIN U. CHARFAUROS**, by and through his Court appointed counsel of record, **CYNTHIA V. ECUBE, ESQ.** with the **LAW OFFICE OF CYNTHIA V. ECUBE, ESQ., P.C.**, and hereby submits its Statement of Objections regarding the Draft Findings of the Pre-Sentence Investigation Report (hereinafter "Draft PSI Report") filed in the above-entitled criminal matter, herein.

### II. LEGAL OBJECTIONS TO THE PSI REPORT:

Defendant, **BENJAMIN U. CHARFAUROS** (hereinafter "**CHARFAUROS**"), objects to the computations as determined by the U. S. Probation Office in computing the total adjusted offense level as provided in the Federal Sentencing Advisory Guidelines.

Moreover, as to other factors that may warrant a sentence outside the Advisory Guidelines,

**ORIGINAL**

CVE/abs
L:\CVE CLIENTS\Charfauros, Benjamin\Statement of Objections re Draft Findings of PSI Report\06-14-07.
Case 1:06-cr-00041 Document 49 Filed 06/20/2007 Page 1 of 15

Defendant submits the following mitigating factors to depart outside the advisory guideline range for the Court's consideration:

1. **The Defendant Suffered Extraordinary Physical Or Sexual Abuse As Child.** See U.S. v. Walter, 256 F.3d 891 (9th Cir. 2001)(In this case, the defendant sent a threat to the president: the district court could downward depart from 41 months sentence because combination of brutal beatings by defendant's father, the introduction to drugs and alcohol by his mother, and, most seriously, the sexual abuse defendant faced at the hands of his cousin, constituted the type of extraordinary circumstances justifying consideration of the psychological effects of childhood abuse and establish diminished capacity);   See also, U.S. v. Brown, 985 F.2d 478 (9th Cir. 1993) (Defendant offered a letter recounting his childhood of severe abuse and neglect and produced psychologist's report concluding that childhood trauma was the primary cause of Defendant's criminal behavior, the court could grant downward departure); U.S. v. Roe, 976 F.2d 1216 (9th Cir. 1992) (Court clearly erred in holding it did not have discretion to depart downward where defendant's suffered extraordinary sexual abuse as a child); U.S. v. Rivera, 192 F.3d 81, 84 (2d Cir. 1999) ("It seems beyond question that abuse suffered during childhood" at some level of severity "can impair a person's mental and emotional conditions . . . in extraordinary circumstances "district courts may properly grant a downward departure on the ground that extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense." ; U.S. v. Pullen, 89 F.3d 368 (7th Cir. 1996) (In light of Koon v. U.S., 518 U.S. 81 (1996), sentence remanded to see if Defendant can establish that childhood abuse was extraordinary to enable judge to exercise discretion to depart downward); See Santosky v. Kramer, 455 U.S. 745, 789 (1982) (Rehnquist, J., joined by Burger, C.J., White, and O'Connor, J., dissenting) ("It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens"); Motley v. Collins, 3 F.3d 781, 792 (5th Cir. 1993) (death penalty) (The fact that a doctor did not opine thatt he murder was likely the result of child abuse did not preclude jurors from making the required inference "after all, the effects of child abuse are not peculiarly within the province of an expert . . . it requires no citation of authority to assert that children who are abused in their youth generally face

CVE/abs
L:\CVE CLIENTS\Charfauros, Benjamin\Statement of Objections re Draft Findings of PSI Report\06-14-07.
Case 1:06-cr-00041 Document 49 Filed 06/20/2007 Page 2 of 15

extraordinary problems developing into responsible, productive, citizens"); U.S. v. Ayers, 971 F. Supp. 1197 (N.D. Ill. 1997) (Departure granted based upon cruel childhood with relentless physical, sexual and psychological abuse over course of years).

In the present case, Defendant indicated that he was a victim of child abuse at a very young age, and that this abuse continued well into his teenage years. According to the Defendant, his father was was an abusive man and that his father started abusing him when he was in the third grade. See Paragraph 82 of the Draft PSI Report. The Defendant recalls many instances when his father was abusive towards him. The Defendant stated that when he was in the sixth grade and was tired of the physical abuse by his father, he told his mother that if she did not do anything about his father's violence, he would hang himself. See Paragraph 83 of the Draft PSI Report. After the Defendant had shared this information with his mother, Defendant's mother attempted to leave his father, however, when she did leave, Defendant's father found them and threatened to hurt the family if they did not come back home. The Defendant stated that he never knew "what a happy home was". There was no emotion, no bonding, no fun times and laughter. He never knew of a home without violence. See Paragraph 84 of the draft PSI Report. The Defendant stated that all he ever learned from his father was "how to hit" and "hurt others". See Paragraph 82 of the Draft PSI Report. According to Defendant's mother, she recalled several instances of her ex-husband's abuse towards the Defendant. She indicated that the Defendant's father had placed a gun in defendant's mouth when he was angry, made the Defendant stand outside the house, naked while saluting passing cars, and sleeping outside the house naked as punishment for something he may have done wrong. See Paragraph 86 of the Draft PSI Report.

2.  **The Defendant Was Exposed To Domestic Violence.** The court can consider the defendant's troubled upbringing and his exposure to domestic violence as a child. See U.S. v. Lopez, 938 F.2d 1293, 1298 (D. C. Cir. 1991); See U.S. v. Deigert, 916 F.2d 916, 918-19 (4th Cir. 1990); See Penry v. Lynaugh, 492 U.S. 302, 319 (1989) (Evidence about the defendant's background is relevant because of the belief "long held by this society, that the defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional or mental problems may be less culpable

CVE/abs
L:\CVE CLIENTS\Charfauros, Benjamin\Statement of Objections to Draft Findings of PSI Report 06-14-07.
Case 1:06-cr-00041   Document 49   Filed 06/20/2007   Page 3 of 15

than defendants who have no such excuse."). Defendant hereby incorporates the same arguments as mentioned herein-above in Paragraph 1. Additionally, Defendant submits that he has been a long time victim to the exposure to domestic violence. According to Defendant's mother, she recalled jumping out of a second story window with the Defendant when he was six (6) years old when her ex-husband threatened to shoot them. See Paragraph 86 of the Draft PSI Report. Defendant's mother stated that Defendant could not forget the abuse he suffered at the hands of his father. Even after the divorce, Defendant became a delinquent adolescent and eventually became abusive in his own interpersonal relationships. See Paragraph 85 of the Draft PSI Report. Based upon Defendant's mother's comments, she blames herself for Defendant's situation. See Paragraph 87 of the Draft PSI Report.

3.  **The Defendant Manifested "Super" Acceptance Of Responsibility.** See U.S. v. Milne, 384 F. Supp.2d 1309 (E.D. Wis. 2005)(in bank fraud case, advisory guidelines range of adjustment for acceptance and offense level of 18-24 months did not fully account for defendant's voluntary reporting of his misconduct to bank and his significant early efforts to repay bank); U.S. v. Smith, 311 F. Supp.2d 801 (E.D. Wis. 2004) (in sale of crack case, two level downward departure from heartland of sentencing guidelines granted, even though defendant also received offense level reduction for acceptance of responsibility, where defendant demonstrated self-improvement, fundamental change in attitude, and complete withdrawal from criminal drug distribution lifestyle in three years before he was arrested and before he knew he was under investigation, and those post-offense, pre-arrest rehabilitative efforts had not been taken into account in formulating guideline range; U.S. v. Kim, 364 F.3d 1235 (11th Cir. 2004) ($280,000 restitution by defendants, a husband and wife, after they pled guilty to conspiracy to defraud the United States and fraudulently obtaining government assistance, respectively, was extraordinary enough to remove case from heartland and justify downward departure from 24 months to probation and home detention where defendants dipped significantly into their life savings and voluntarily undertook enormous amount of debt to pay restitution; defendants' conduct demonstrated their sincere remorse and acceptance of responsibility); U.S. v. Brown, 985 F.2d 478, 482-83 (9th Cir. 1993) (under § 5K2.0, in light of defendant's confession, court can depart downward from the range if it determines that the two point reduction did not adequately reflect acceptance); U.S. v.

CVE/abs
L:\CVE-CLIENTS\Charfauros, Benjamin\Statement of Objections & Draft Findings of PSI Report\06-14-07.

Case 1:06-cr-00041    Document 49    Filed 06/20/2007    Page 4 of 15

Miller, 991 F.2d 552 (9th Cir. 1993) (voluntary restitution exhibiting extraordinary acceptance of responsibility can justify downward departure); U.S. v. Farrier, 948 F.2d 1125, 1127 (9th Cir. 1991) (admission of guilt to other crimes can justify departure under §5K2.0, but not further adjustment for acceptance); U.S. v. Gee, 226 F.3d 885 (7th Cir. 2000)(affirms 2-level downward departure for acceptance of responsibility under §5K2.0, where D was not eligible for adjustment for acceptance under §3E1.1 because went to trial. Defendant demonstrated a non-heartland acceptance in that he made early and consistent offers to government to determine legality of his business); U.S. v. Faulks, 143 F.3d 133 (3d Cir. 1998); U.S. v. DeMonte, 25 F.3d 343, 349 (6th Cir. 1994) (in computer fraud case, departure proper on ground that defendant admitted to crimes about which government had no knowledge, even though part of plea bargain to cooperate-remanded); U.S. v. Evans, 49 F.3d 109 (3d Cir. 1995) (voluntary disclosure of true identity resulting in increased criminal history score may warrant downward departure); U.S. v. Rogers, 972 F.2d 489, 494 (2d Cir. 1992) (district court empowered to depart downward where defendant emerged from a drug-induced state, realized his wrongdoing and turned himself in and confessed); U.S. v. Lieberman, 971 F.2d 989, 995-96 (3d Cir. 1992) (one level downward departure o.k. where Defendant offered to make restitution greater that amount taken, met with bankers and offered to explain how avoided detection, resigned his position and went to FBI to admit his embezzlement, pled guilty); U.S. v Crumb, 902 F.2d 1337, 1339-40 (8th Cir. 1990) (voluntary surrender nine days after issuance of warrant, 9 month downward departure). District Court: U.S. v. Rothberg, 222 F. Supp. 2d 1009 (N.D. Ill. 2002) (where defendant pled to copy right infringement without plea bargain, and where, despite the government's refusal to file motion for downward departure under U.S.S.G. §5K1.1, defendant continued to cooperate with the government, and where, in doing so, he put himself at risk of a significant detriment: without a plea agreement, there was nothing to prevent the government from using the information he provided against him at sentencing, defendant's efforts show acceptance of responsibility that is outside the heartland of ? 3E1.1, with other factors, warranted two level additional departure); U.S. v. Nguyen, 212 F.Supp.2d 1008 (N.D. Iowa 2002) (where Defendant entered Alford plea to possessing 45 grams of crack and then testified in his sister's trial that he put them in her handbag, and she was acquitted, district court grant

CVE/abs
L:\CVE CLIENTS\CH00044s, Benjamin\Statement of Objections to PSI findings-Draft Report 06-14-07.
Case 1:06-cr-00041 Document 49 Filed 06/20/2007 Page 5 of 15

an extra three level departure to defendant for ?extraordinary acceptance of responsibility,?under U.S.S.G. §5K2.0); U.S. v. Stewart, 154 F.Supp.2d 1336 (E.D. Tenn. 2001) (where defendant pled guilty to possession of 8 ounces of cocaine, eight-level downward departure, in addition to 3 normal levels, granted for "extraordinary acceptance" where defendant continued to plead guilty even though judge had granted co-defendant's suppression motion which could have resulted in dismissal of defendant's case); U.S. v. Davis 797 F. Supp. 672 (D.C.N. Ind. 1992) (8-level downward departure proper where defendant make $775,000 restitution voluntarily); U.S. v. Ziegler, 835 F. Supp. 1335 (D. Kan. 1993) (downward departure justified for complete acceptance of responsibility exhibited by extraordinary drug rehabilitation in that defendant had smoked 20 marijuana cigarettes a day for 20 years and stopped).

In this case, Defendant Charfauros submits that he has demonstrated an affirmative acceptance of responsibility, and that the U. S. Probation Office has determined that the Defendant has accepted his responsibility for his actions. See Paragraph 34 of the Draft PSI Report. As noted in the PSI Report, the Defendant accepted his responsibility early on during the criminal proceedings and pled guilty without proceeding forward to a lengthy and arduous trial.

4.  **Defendant Showed Extreme Remorse**. U. S. v. Fagan, 162 F.3d 1280, 1284-85 (10th Cir. 1998) (because guidelines do not expressly forbid the departure, under rationale of Koon, court may downward depart where defendant showed great remorse "to an exceptional degree" even though D already received adjustment for acceptance of responsibility); U.S. v. Jaroszenko, 92 F.3d 486 (7th Cir. 1996).

In this case, Defendant Charfauros submits that he is remorseful for what he has done. He knew better but was not strong enough to say no to the other co-defendant. He further worries about the future of his young children.

5.  **Cooperation of Defendant On Court's Own Motion Where Government Refuses to Make §5K1.1 Motion**. Under Post-Booker, defendant's cooperation reflects reduced likelihood of recidivism; therefore below guideline sentence warranted under 18 U. S. C. Section 3553(a)(2)(C) see U.S. v. Murray 2005 WL 1200185 (S.D.N.Y. May 20, 2005) (unpub.) (The fact that Defendant testified as witness for the government at time when he had nothing to gain "provides support for his

CVE/abs
L:\CVE CLIENTS\Charfauros, Benjamin\Statement of Objections re Draft Findings of PSI Report\06-14-07.
Case 1:06-cr-00041  Document 49  Filed 06/20/2007  Page 6 of 15

genuine contrition"); U.S. v. Hubbard, 369 F.Supp.2d 146, 150 (D. Mass. 2005) (suggesting court can correct for government's bad faith not making motion under 3553(a)(2)(C); U.S. v. Khoury, 62 F.3d 1138 (9th Cir. 1995) (court may depart downward where government refuses to make §5K1.1 motion because Defendant went to trial although government initially offered to do so and where D's cooperation led to arrest of co-defendant); U.S. v. Treleaven, 35 F.3d 458 (9th Cir. 1994); U.S. v. Paramo, 998 F.2d 1212 (3d Cir. 1993) (remanded to show whether government's refusal to make ?5K1.1 motion for only coconspirator who went to trial was pretextual). When departing downward, court must evaluate Defendant's cooperation on an individualized basis and cannot engage in mechanical reduction of only 3-levels. U.S. v. King, 53 F.3d 589, 590-92 (3d Cir. 1995).

In this matter, the Defendant had cooperated with government to provide all the truthful information that he had knowledge concerning known drug traffickers on Guam, and has demonstrated a willingness to render any substantial assistance to the federal agents, by way of providing vital information concerning those individuals that do illegal production of methamphetamine. According to Defendant Charfauros, the Defendant met with case agent Nyguen twice to discuss critical information relating to those individuals who illegally produce and cook methamphetamine in a make shift meth labs on Guam. According to Defendant, DEA and ATF were simply not interested in Defendant's assistance related to meth labs and were primarily concerned with Defendant's knowledge of the illegal transfer of firearms and weapons. Notwithstanding Defendant's insistence in rendering substantial assistance to the government concerning the drug trafficking, Defendant's proposal for substantial assistance has not been acknowledged by the government.

6. **Defendant's Attempted Cooperation with the Government.** In U.S. v. Tenzer, 213 F.3d 34 (2d Cir. 2000) (Remanded- District Court has discretion to depart where Defendant tried to negotiate with IRS to make payments through voluntary disclosure program, even though talks broke down and Defendant was convicted); U. S. v. Jaber, 362 F. Supp.2d 365 (D. Mass. 2005) (In meth. conspiracy, downward departure granted in part because defendant tried to cooperate repeatedly but had little to offer " there is something troubling about the extent to which differences in sentencing were driven not by difference in the crime, but by the happenstance of the way the government

CVE/abs
L:\CVE-CLIENTS\Ch-00044, Benjamin\Statement of Objections Findings re PSI Report 06-14-07.
Case 1:06-cr-00041 Document 49 Filed 06/20/2007 Page 7 of 15

1  indicted, the jurisdictions of indictment, and who ran to cooperate first. Because of Abu-Law's prominence, and the timing of his cooperation, the government had virtually all it needed before it got to Jaber.

In the instant case, Defendant Charfauros throughout the course of his criminal proceeding has demonstrated his willingness and eagerness to cooperate with the government to the best of his ability concerning illegal trafficking on Guam.

7. **Extraordinary Family Situations Or Responsibilities Or Where Incarceration Would Have Harsh Effect On Innocent Family Members.** See U.S. v. Menyweather 431 F.3d 692, 700 (C.A.9 2005) ( In $500,000 embezzlement case, no abuse of discretion for district court to depart 8 levels to probation in part because of unusual family circumstances were "Defendant's relationship with her daughter, and the care that Defendant provides, are unusual as compared with the situation of other single parents."); U.S. v. Antonakopoulos 399 F.3d 68, 81 (1st Cir. 2005) (In bank fraud case, on remand district court may consider fact that defendant was caretaker for his brain damaged son as grounds for sentence below guideline range even though there were alternative means of care so defendant apparently did qualify for traditional departure) U.S. v. Leon, 341 F.3d 928 (9th Cir. 2003) (in false income tax return case court affirms district court's downward departure of six levels from 30 months to 10-16 months granted because defendant sole caregiver of his wife who suffered from renal failure and is suicidal-court reaches same result whether standard is abuse of discretion or de novo as required by Feeney amendment); U.S. v. Aguirre, 214 F.3d 1122 (9th Cir. 2000) (Within district court's discretion to depart downward 4 levels for extraordinary family circumstances "based on the fact that there is an 8 year-old son who's lost a father and would be losing a mother for a substantial period of time"); U.S. v. Dominguez, 296 F.3d 192 (3rd Cir.2002) (In bank fraud case, district court erred in holding it could not depart four levels downward for defendant who resided with her elderly parents, who were physically and financially dependant upon her where father had undergone brain surgery and had suffered a heart attack,... circumstances were "truly tragic"); U.S. v. Gauvin, 173 F.3d 798 (10th Cir. 1999) (where defendant supported 4 young children and wife worked 14 hours a day 44 miles from home and barely able to provide for children, and at risk of losing custody of children and job, and no

CVE/abs
L:\CVE CLIENTS\Charfauros, Benjamin\Statement of Objections re Draft Findings of PSI Report 06-14-07.
Case 1:06-cr-00041 Document 49 Filed 06/20/2007 Page 8 of 15

extended family to take custody of children, departure of three levels to 37 months, making Defendant was eligible for shock incarceration, warranted under §5H1.6 "to minimize the impact of defendant's children"); U.S. v. Owens, 145 F.3d 923 (7th Cir. 1998) (affirmed downward departure from level 32 (169 to 210 months) to 120 months under 5H1.6 for defendant convicted of possession of crack cocaine with intent to distribute where "he maintained a good relationship with his [three] children"; he also spent time every day with a brother who suffered from Downs Syndrome and where common law wife testified that if the defendant went to prison "she might have to move to public-assisted housing and receive welfare benefits." So district court said defendant's situation "differs from that of a typical crack dealer in that [the defendant] takes an active role in raising his children and supporting his family." ); U.S. v. Galante, 111 F.3d 1029 (2d Cir.1997) (Affirms district court's 13-level downward departure in drug case from 46-57 months to 8 days "where Defendant showed he was a conscientious and caring father of two young sons who would have faced severe financial hardships." ); U.S. v. Milikowsky, 65 F.3d 4, 8 (2d Cir. 1995) ("Among the permissible justifications for downward departure ... is the need, given appropriate circumstances, to reduce the destructive effects that incarceration of a defendant may have on innocent third parties."); U.S. v. Rivera, 994 F.2d 942, 952-54 (1st Cir. 1993) (Note: reasoning of this case largely adopted in Koon) (Breyer, J.); U.S. v. Haversat, 22 F.3d 790 (8th Cir. 1994) (in antitrust case where husband's care is critical to well-being of mentally ill wife, downward departure ok, but not to probation); U.S. v. Ekhator, 17 F.3d 53 (2d 1994) (Even where Defendant agreed not to ask for downward departure court may do so *sua sponte* if unusual family circumstances; Here Nigerian widow with five children 3 of whom were very ill; remanded); U.S. v. One Star, 9 F.3d 60 (8th Cir. 1993) (Ex-felon in possession - departure downward from 33 months to probation proper where defendant not dangerous, possessed revolver in self-defense, had strong family ties, and lived on Indian reservation); U.S. v. Sclamo, 997 F.2d 970 (1st Cir. 1993) (affirmed downward departure from 24-30 month range to six months home detention for defendant who had been living with a divorced woman and her two children since and had developed special relationship with woman's son that helped ameliorate son's serious psychological and behavioral problem, and son would regress if Defendant was incarcerated); U.S. v. Gaskill, 991 F.2d 82, 85-86 (3d Cir. 1993) (remanded for court to consider

CVE/abs
L:\CVE-CLIENTS\Ch-06-041s, Benjamin\Statement of Objections to Drafting of PSI Report\06-14-07.
Case 1:06-cr-00041  Document 49  Filed 06/20/2007  Page 9 of 15

downward whether departure to house confinement or probation warranted under §5H1.6 where defendant only care-provider to mentally ill wife, no danger to community "indeed benefit to it by allowing Defendant to care for wife" and only short period of incarceration called for); U.S. v. Johnson, 964 F.2d 124, 128-130 (2d Cir. 1992) (in embezzlement case, approving 13-level downward departure, where Defendant was a single mother responsible for three young children and young child of her institutionalized daughter, depart not because Defendant has lesser culpability but because "we are reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing"); U.S. v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991) (Defendant and wife cared for four and eleven year old and disabled father and paternal grandmother, incarceration could well result in destruction of an otherwise strong family unit); U.S. v. Pena, 930 F.2d 1486, 1495 (10th Cir. 1991) (single parent of infant and sole support of sixteen-year old daughter and daughter's infant); U.S. v. Big Crow, 898 F.2d 1326, 1331 (8th Cir. 1990) (solid family and community ties and "consistent efforts to lead a decent life in the difficult environment" of an Indian reservation). District Court: U.S. v. Milne 384 F.Supp.2d 3091313 (E.D.Wis.,2005) (In bank fraud case court reduces guideline sentence by one level because defendant was sole supporter of a large family, and "a long period of imprisonment would have a very harsh effect on defendant's dependents."). U.S. v. Bailey, 369 F. Supp.2d 1090 (D. Neb. 2005) (Under Post Booker, applying 2001 guidelines, where Defendant convicted of possession of child pornography, and where guidelines 24 to 27 months, departure to probation warranted because, as confirmed by expert testimony, defendant's child has a serious illness or condition (having been molested), the defendant's presence is critical to the child's continued recovery, and the defendant's presence cannot reasonably be duplicated by using other providers, and there is a reasonable assurance that Bailey is not dangerous to the public (especially including children), as confirmed by expert psychologist, and his crime is far less serious than the customary child-pornography cases, "and the benefit to the public of incarcerating Bailey indisputably outweighed by the harm that prison sentence will have on Cheyenne, an innocent member of society"); U.S. v. Manasrah, 347 F. Supp. 2d 634 (E.D. Wisc. 2004) (Pre-Booker, where Defendant, where immigrant was from West bank, convicted of mail fraud in illegal coupon redemption scheme, judge departs two levels to probation with home detention

where husband threatened take the children back to the West Bank and not allow defendant to see them again if wife incarcerated. "Imprisonment would cause both defendant and her children to suffer inordinately. Their circumstances are extraordinary, far worse than those faced by a defendant-parent and her children in the usual case."); U. S. .v. Mateo, 299 F. Supp.2d 201 (S. D. N.Y. 2004) (in heroin case where defendant's two young children were "thrust into the care" of defendant's relatives, "who report extreme difficulties in raising them" and where both fathers are absent, and the children, now ages six and one, will be raised apart from both biological parents for as long as the defendant is in custody, a downward departure is appropriate); U.S. v. Colp, 249 F. Supp. 2d 740 (E.D. Va. 2003) (where defendant pled guilty to one count of income tax evasion departure from guideline range of 10 to 16 months to probation warranted because of extraordinary family circumstances in that she was the sole caretaker for her disabled husband who suffers from a brain injury resulting from auto accident. "Any period of incarceration" here would "serve as an undue hardship on Mr. Colp"); U.S. v. Greene, 249 F. Supp.2d 262 (SDNY 2003) (In tax case, defendant was granted seven-level departure because of extraordinary charitable good works as well as extraordinary family circumstances including being single parent of three adopted children with numerous psychological problems and highly dependent on D and in desperate need of stability); U.S. v. Norton, 218 F. Supp.2d 1014 ( E. D. Wisc. 2002); (departure from 15-21 months to probation and home confinement granted to D convicted of credit card fraud observing that the Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." (U.S. v. Johnson, 964 F.2d 124, 125 (2nd Cir. 1992). The defendant was a 38-year old single mother of three children who cares for aging mother. If she were incarcerated, the children would "almost certainly" be placed in foster care. It is proper to consider harm to children because a court must consider the public interest which requires that a defendant be held accountable for her conduct. However, "the public also has an interest in not having children unnecessarily placed in foster care. Such placements increase costs to taxpayers and may be more likely to cause children to become law breakers. See generally, John Hagan & Ronit Dinovitzer, Collateral Consequences of Imprisonment for Children, Communities, and Prisoners, 26 Crime & Justice 121 (1999). "A departure is most appropriate when the defendant could be given probation (or home confinement) rather than

CVE/abs
L:\CVE-CLIENTS\Charfauros, Benjamin\Statement of Objections re Draft Finding of PSI Report\06-14-07.
Case 1:06-cr-00041 Document 49 Filed 06/20/2007 Page 11 of 15

incarceration with only a small downward departure"... " Court was reluctant" "to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing."); U.S. v. Kloda, 133 F. Supp.2d 345 (S. D. N.Y. 2001) (father and daughter who filed false tax returns for their business entitled to downward departure in part because of needs of daughter's small children. A judge must sentence "without ever being indifferent to a defendant's plea for compassion, for compassion also is a component of justice."); U.S. v. Tineo, 2000 WL 759837 (S. D. N. Y. June 8, 2000) (downward departure is warranted if "incarceration in accordance with the Guidelines might well result in the destruction of an otherwise strong family unit" in credit card fraud departure from 10 to 16 months to probation is warranted where mother sole financial support of three young children); U.S. v. Blake, 89 F. Supp.2d 328 (E. D. N.Y. 2000) (in bank robbery, departure from level 29 to level 8 and probation proper in part because of emotional trauma 3-year-old daughter would suffer); U.S. v. Wehrbein, 61 F. Supp.2d 958 (D. Neb. 1999) (downward departure to probation in case involving low-level trafficking in methamphetamine and possession of weapons; where defendant's 11-year-old son, whose emotional and mental disorders improved markedly when defendant returned from serving state sentence on similar charges, would be harmed if defendant was not present to provide continued structured discipline, there were no other care givers available to substitute for defendant and federal government could have avoided or lessened impact on child if federal prosecutor had not delayed 14 months after matter was referred before commencing federal case); U.S. v. Hammond, 37 F. Supp.2d 204 (E.D.N.Y. 1999) (defendant in drug case suffering from advanced HIV entitled to a downward departure from 48 to 18 months where family will suffer extraordinary financial and emotional harsh from his incarceration. "A sentence without a downward departure would contribute to the needless suffering of young, innocent children."); United States v. DeRoover, 36 F. Supp. 2d 531, 532-33 (E. D. N.Y. 1999) (granting 12-level departure and 5-month prison sentence for single mother of five convicted of possession of about a kilogram of heroin based in large part upon the fact that elderly grandmother could not continue to care for the children and "[o]ne child suffers from" separation anxiety " . . . . [and] has been under psychiatric observation" "The unique dependence of children on a defendant is a basis for a downward departure.") (Weinstein, J.); U.S. v. Lopez, 28 F. Supp.2d 953 (E. D. Pa. 1998)

CVE/abs
L:\CVE-CLIENTS\Charfauros, Benjamin\Statement of Objections re Draft Finding of PSI Report 06-14-07.
Case 1:06-cr-00041   Document 49   Filed 06/20/2007   Page 12 of 15

(extraordinary family circumstances warranted a downward departure of six levels for a defendant who pleaded guilty to conspiracy to distribute heroin and to forfeiture charge where defendant's seven-year-old daughter suffered mental illness and attempted suicide since the defendant's arrest. A risk existed that the defendant's parental rights would be terminated if she was sentenced to her full range of incarceration. In addition, the defendant was not involved in large-scale drug dealing); U.S. v. Chambers, 885 F. Supp. 12, 14 (D. D.C. 1995) (defendant is single mother with two children ages 12 and 15, incarcerating defendant for 15 years would deprived children of sole parent "that children need supportive and loving parents to avoid the perils of life is without question . . . causing needless suffering of young, innocent children does not promote the ends of justice"); U.S. v. Blackwell, 897 F.Supp. 586, 588 (D. D.C. 1995) (causing needless suffering of innocent children not in the interests of justice); U.S. v. Rose, 885 F. Supp. 62 (E. D. N.Y. 1995) (Defendant, charged with interstate receipt of firearm, who had no prior record and who assumed role of non-custodial surrogate father to four children and aided struggling grandmother in raising them merited downward departure to probation because the departure "is on behalf of the family"); U.S. v. Newell, 790 F. Supp. 1063, 1064 (E.D. Wash. 1992) (granting downward departure to defendant who was caretaker of six young children).

    As Defendant Charfauros stated, he worries now about his small children and his concern that by the time he is released from prison, his children's lives will have changed dramatically. See Paragraph 33 of the Draft PSI Report. According to Defendant's mother, she has urged the Court leniency for her son since she know how difficult it is for the children to not have a father in their lives. She reports that her son is a good person, but may need counseling and professional services to help him. Equally important, Defendant's girlfriend also indicates that the Defendant is a good person and is a kind and loving father. Clearly, the impact of long term incarceration will have a dramatic and detrimental impact on Defendant's children.

    8. **Defendant's Extraordinary Mental And Emotional Condition.** In U.S. v. Walter, 256 F.3d 891 (9th Cir. 2001)(A combination of brutal beatings by defendant's father, the introduction to drugs and alcohol by his mother, and, most seriously, the sexual abuse defendant faced at the hands of his cousin, constituted the type of extraordinary circumstances justifying sentencing court's

CVE/abs
L:\CVE CLIENTS\Charfauros, Benjamin\Statement of Objections to Draft Finding of PSI Report\06-14-07.
Case 1:06-cr-00041 Document 49 Filed 06/20/2007 Page 13 of 15

consideration of the psychological effects of childhood abuse and establish diminished capacity); In <u>U.S. v. Garza-Juarez, 992 F.2d 896, 913</u> (9th Cir. 1993) (Where Defendant was convicted of sale of guns and possession of silencers, the Court departed downward under §5H1.3 where Defendant suffered from panic disorder and agoraphobia. See generally in <u>Penry v. Lynaugh, 492 U.S. 302, 322</u> (1989) (O'Connor, J., concurring) ("mental retardation may render a defendant less morally culpable than defendant who have no such excuse").

In summary, Defendant submits that the mitigating factors as enumerated herein warrant a further reduction from a Level 30, Criminal History Category VI, to a level 20, herein.

Lastly, Defendant further submits that the Court should not impose restitution in this case since the victims in this matter are no longer available to testify as to full amount of restitution allegedly owed to them by Defendant.

Dated this 19th day of June, 2007.

LAW OFFICE OF CYNTHIA V. ECUBE, ESQ.
A Professional Corporation

By: _____
CYNTHIA V. ECUBE, ESQ.
Attorney for Defendant

/ / /

/ / /

/ / /

CVE/abs
L:\CVE-CLIENTS\Charfauros, Benjamin\Statement of Objections re Draft Findings of PSI Report\06-14-07.

## CERTIFICATE OF SERVICE

I, **Amber Sanchez**, Legal Secretary with the Law Office of Cynthia V. Ecube, Esq., P.C., hereby certify that on the 20th day of June, 2007, I caused to be served via facsimile a copy of "Defendant Bautista's Statement of Objections regarding the Draft Findings of the Pre-Sentence Investigation Report" in Criminal Case No. 06-00041-002, to:

ROSETTA SAN NICOLAS, Esq.
Assistant U. S. Attorney
U. S. Attorney's Office
Sirena Plaza, Suite 500
108 Hernan Cortez, Suite 500
Hagåtña, Guam 96910

and to,

CARLEEN G. BORJA
United States Probation Officer
United States Probation Office
2nd Floor, District Court
520 W. Soledad Ave.
Hagåtña, Guam 96910

_____
AMBER SANCHEZ

CVE/abs
L:\CVE-CLIENTS\Charfauros, Benjamin\Statement of Objections to Draft Findings of PSI Report 06-14-07.